**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

|  | : |  |
|---|---|---|
| MARION OLIVETTI, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-cv-1384 |
| | : | |
| v. | : | (JUDGE MANNION) |
| | : | |
| JEWISH FEDERATION OF NORTHEASTERN PENNSYLVANIA | : | |
| | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM

This case centers on a charge of workplace racial discrimination brought pursuant to 42 U.S.C. §1981. Plaintiff claims that Defendant created a hostile work environment and eventually terminated her because she is not Jewish.

## I.    BACKGROUND[1]

Plaintiff was hired by Defendant, which raises and administers funds for Jewish causes, as an Office Manager at its office in Scranton. She was

---

[1] Because it is considering motions to dismiss for failure to state a claim, the court must accept the complaint's factual allegations as true. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

the only non-Jewish person employed there and was supervised by Daniel Chejfec, who is Jewish.

Early in her employment, Mr. Chejfac asked Plaintiff about her ethnic heritage, and she told him that she was of mostly Irish ancestry. When she said that her husband and children were "about 2% Jewish," he interjected to say that her children could not be Jewish because they were not born of a Jewish mother. (Doc. 1 ¶13). Following that conversation, "he became very hostile, aggressive, and demeaning in his daily interactions with Plaintiff." (Id. ¶15). He also "regularly went out of his way to humiliate, insult, or dismiss Plaintiff," including one instance when he humiliated Plaintiff with a remark about how little money she earned. (Id. ¶16). Mr. Chejfec made negative comments about his neighbors and the celebration of Christmas. (Id ¶17–19).[2] He "did not engage in similar hostile or abusive conduct" toward other employees. (Id. ¶20). Plaintiff mentioned Mr. Chejfac's conduct to other employees and tried to contact Defendant's Board members. On February

---

[2] More specifically, she alleges that Mr. Chejfec complained about the United States' recognition of the Christmas holiday, expressed disgust at the idea of a combined Christmas/Hanukkah celebration, told Plaintiff that his neighbors left Christmas gifts on his porch and that he "did not 'want any part of Christmas or people like them,'" and later told her that he wanted to get out of his neighborhood and away from his neighbors "because he did not 'want anything to do with people like them.'" (Doc. 1 ¶¶17–19).

23, 2023, Plaintiff was terminated. She asked for a reason but was given none. (Id. ¶24).

## II.   LEGAL STANDARD

In response to a complaint, a party may move for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must make more than "conclusory or 'bare-bones' allegations," and "'threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, the complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

In considering the complaint, the court must apply a "two-part analysis." *Id.* "First," the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210–11. "Second," the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim to relief." *Id.* at 211.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that the defendant has acted unlawfully." *Id.* (first quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and then quoting *Iqbal*, 556 U.S. at 678). "A complaint that pleads facts 'merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Plaintiff brings her claims under 42 U.S.C. §1981, which provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens,

- 4 -

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981(a).

It has been recognized that §1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460 (1975). And "the filing of a Title VII [of the Civil Rights Act of 1964] charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a §1981 action." *Id.*

### A. Is Plaintiff protected by §1981?

Defendant first argues that "there is no indication … that suggests Congress intended to provide statutory protection to non-Jewish white women." (Doc. 9 at 7).

The Third Circuit has stated that one element of a §1981 claim is that "the plaintiff is a member of a racial minority." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). But, as other courts have noted,[3] that case involved African-American plaintiffs. *Id.* at 793. And the Supreme Court has held that "§1981 is applicable to racial discrimination in private employment

---

[3] *See Kovalev v. Home Depot U.S.A., Inc.*, 2023 WL 2588549, at *11 n.4 (E.D. Pa. 2023); *Clemente v. Allstate Ins. Co.*, 647 F. Supp. 3d 356, 369 (W.D. Pa. 2022).

against white persons." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 285–86 (1976); *see also Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) ("[W]ith respect to §1981, we have explained that the provision was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."). Bound by this authority, the court must conclude that Plaintiff is not precluded from bringing her §1981 claims solely because she is white.

Defendant also suggests that Plaintiff's "allegations are more suited for a religious discrimination claim." (Doc. 9 at 6). Her allegations regarding Mr. Chejfec's comments about Christmas and his neighbors may concern religion. But Plaintiff specifically alleges racial discrimination in her complaint, alleges that Mr. Chejfec asked her about her ethnic heritage, and does not mention her own religion. She refers only to the Jewish race, not to Judaism. And Defendant appears to acknowledge that "Jewish" may also refer to a race. (See Doc. 9 at 6–7 ("§1981 was enacted to protect the very group of persons against whom [Plaintiff] asserts her claim.")). *See also King v. Twp. of East Lampeter*, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998) (citing *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 618 (1987)) ("The Supreme Court has held that Jews are a distinct race for civil rights purposes."); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)

("Based on the history of §1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subject to intentional discrimination solely because of their ancestry or ethnic characteristics.").

### B. Does §1981 apply to an at-will employment relationship?

Defendant next asserts that Plaintiff states no §1981 claim because she has not alleged that her right to make or enforce contracts was threatened or that she had a protected contractual interest. (Doc. 9 at 9). She had no such right, Defendant argues, because she was party to an at-will employment agreement. (Id. at 9–10). Although Defendant asserts that "extensive case law" reveals Plaintiff's Complaint to be deficient, it does not provide support for the proposition that an at-will employment agreement is not a contract under §1981. To the contrary, courts have concluded that §1981's right "to make and enforce contracts" includes at-will employment. *See Rodrigues v. Motorworld Auto. Grp.*, 2017 WL 1036477, at *4 (M.D. Pa. 2017); *Sims v. Mercedes-Benz*, 2017 WL 3641743, at *4 (D. N.J. 2017); *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695 (E.D. Pa. 2002) (noting that "[e]very appellate court that has examined the legislative

history of the 1991 statute has concluded that Congress intended the term 'contract' to encompass at-will employment" and collecting cases).

Plaintiff has alleged that she was employed by Defendant pursuant to an at-will employment agreement, and thus she had a contractual interest in that employment. She has also alleged that Defendant interfered with that contractual interest by terminating her and creating a hostile work environment on the basis of her race. So this argument does not warrant dismissal of Plaintiff's complaint.

### C. Has Plaintiff alleged facts sufficient to show that she has a plausible §1981 claim?

Defendant further contends that Plaintiff's factual allegations are insufficient to state a claim under §1981. (Doc. 9 at 10; Doc. 14). To state a §1981 claim, a plaintiff must allege facts supporting an "intent to discriminate on the basis of race by the defendant." *Brown*, 250 F.3d at 797. She must "initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Plaintiff brings two counts, both under §1981: (I) discriminatory discharge based on race and (II) hostile work environment based on race. (Doc. 1 at 5–6). Defendant argues generally that Plaintiff "has not alleged

even an inference of intentional racial discrimination" and "has failed to plead sufficient facts that would meet the but-for standard," and that "there was no racial animus in the decision to terminate Plaintiff." (Doc. 9 at 6, 10).

Several facts alleged, taken together, create an inference of intentional discrimination sufficient to withstand dismissal. Plaintiff has alleged that her supervisor, Mr. Chejfec, asked about her ethnicity and interjected that her children could not be Jewish without having been born to a Jewish mother. (Doc. 1 ¶13). He thereafter "became very hostile, aggressive, and demeaning, in his daily interactions with Plaintiff," would "scream or bark orders" at her, and "went out of his way to humiliate, insult, or dismiss" her—conduct of which she provides a specific example. (Id. ¶¶15–16). Her Jewish coworkers were treated differently, she alleges, in that they were not subjected to "similar hostile or abusive conduct." (Id. ¶20). Mr. Chejfec also made several remarks concerning Christmas and his neighbors that celebrate it, which plausibly suggest an animus toward non-Jewish people. (Id. ¶¶17–19). Finally, Plaintiff was terminated, allegedly with no reason given, and replaced with a Jewish person. (Id. ¶¶24–25). Viewed as a whole, the differential treatment and remarks suggestive of animus bring her claim of intentional discrimination into the realm of plausibility.

As to the causation requirement, *see Comcast*, 140 S. Ct. at 1019, the Complaint presents no *other* reason for the adverse actions allegedly taken against Plaintiff. She specifically alleges that upon discharge, she "asked for a reason" but Defendant "provided none." Given the lack of alternative explanations, the court cannot conclude that Plaintiff has failed to plead causation.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be denied. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 12, 2024**
23-1384-01

- 10 -